Robert C Weems (CA SBN 148156)
Margaret M. Weems (CA SBN 164030)
WEEMS LAW OFFICES
769 Center Blvd., PMB 38
Fairfax, CA 94930
Ph: 415.881.7653
Fx: 866.610.1430
   rcweems@weemslawoffices.com
   mmweems@weemslawoffices.com

Attorneys for Plaintiffs
   JILL BURNELL AND ALEX BURNELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL BURNELL AND ALEX BURNELL,<br><br>   Plaintiffs,<br><br>v.<br><br>MARIN HUMANE SOCIETY, COUNTY OF MARIN, NANCY MCKENNEY, CINDY MACHADO, STEVE HILL, MICHELLE ROGERS, BRUCE WAGMAN, ALBERT BURNHAM, NATHAN KEEFER, DINA RICCI, and GENEVIEVE GHILOTTI,<br><br>   Defendants. | Case No. 3:14-cv-05636 JSC<br><br>OPPOSITION TO MOTION TO DISMISS (Doc # 50) BY COUNTY<br><br>Hearing:  October 8, 2015<br>Time: 9:00 a.m.<br>Judge: Jacquelyn Scott Corley<br>Courtroom:  F, 15th Fl (SF) |

i

## TABLE OF CONTENTS

1   INTRODUCTION ..................................................................................................................1
   1.1   Reasons Why The Motion to Dismiss Must Be Denied. .....................................3
   1.2   If Defendants' Motion is Granted, Leave to Amend Must Be Permitted ...........4
   1.3   Marin Municipal Code, Title 8 ...........................................................................5
      1.3.1   Improper delegation of authority ............................................................ 7
   1.4   Whatever Explicit Limits Imposed on MHS by The Law As It Stands, County Permits MHS to Ignore With Impunity.............................................................................8
2   CONCLUSION....................................................................................................................10

Exhibit A:  Animal Services Contract

Exhibit B:  Marin Municipal Code, Chapter 8.04 (Animal Control)

Exhibit C:  Machado Declaration re Animal Services Officer is an Animal Control Officer

Exhibit D:  Machado Testimony at Preliminary Hearing

# 1 INTRODUCTION

1. It is appropriate for this Court hold DEFENDANT COUNTY OF MARIN ("COUNTY") to answer the First Amended Complaint. The COUNTY's official policies are found in its Animal Services Contract, overbroad local county ordinances and improper delegation of policing and public agency authority, and/or its customs and practice regarding the vigilante activities and extremist political agenda of DEFENDANT MARIN HUMANE SOCIETY ("MHS") generally, and its, its employees' and their co-conspirators' conduct in this case specifically. COUNTY's policies, ordinances, rules, customs and practices provided the color of law under which the other Defendants attempt to disguise their theft as lawful conduct.

Including the original unlawful seizure, for 28 months Defendants' conspiracy has successfully deprived the BURNELLS of their farm animals that would normally contribute to their support and livelihood. The BURNELLS have been deprived of their liberty interests-- which absolutely must be construed more broadly than simple freedom from constraint, and is "long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390 (1923).

The BURNELLS have been deprived of the Fourteenth Amendment's guarantee of due process and equal protection of the law. COUNTY through its Animal Services Contract, local ordinances and local customs created the "color of law" under which the MHS Defendants conspired to steal and permanently deprive horses (specifically breeding livestock) from the BURNELLS. All of the conduct that the co-conspirators undertook was 1) consistent with MHS' obligations under its COUNTY contract, 2) consistent with MHS' authority under overbroad County ordinances, and/or 3) compelled by the COUNTY's contract, ordinances, customs and policies. COUNTY further as a policy, custom and practice has not required MHS to employ "suitable persons," i.e. Humane Officers, to enforce state animal welfare laws (specifically Penal Code section 597.1) and further wrongfully equates private employee animal services officers with Government employed and regulated peace officers and animal control officers. Not later than January 8, 2013, COUNTY had

actual notice of its vendor's persecution of the BURNELLS and that its vendor refused to return BURNELLS' horses to them.

Here, Plaintiffs oppose COUNTY's MOTION TO DISMISS for all of the following reasons:

1. COUNTY's Animal Services Contract with MHS, COUNTY's municipal code Chapter 8 (specifically 8.04.110, 8.04.120(a), (e), and (i) and 8.04.140) and the custom and policy of overbroad delegation of peace officer authority and its custom and policy to permit defendant MHS to do whatever it wanted to do "for the animals" without actual oversight or restraint or regard for the liberty and property rights of the BURNELLS as guaranteed by the U.S. Constitution, especially through the Fourteenth Amendment. COUNTY's rules, policies, customs and practices provided the "color of law" underlying co-defendants' conspiracy to permanently deprive the BURNELLS of their horses.

2. Local government bodies are included within the ambit off the persons who can be sued under § 1983, where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or a governmental custom. *Monell v. New York City Dept. of Social Servs.* 436 U.S. 658, 690-691 (1978) *City of Sacramento v. Lewis*, 532 U.S. 833 (1998).

3. The California remedy of recourse to the Tort Claims Act need not be first sought before a plaintiff is free to invoke the Civil Rights Act (42 USC § 1983). *Williams v. Horvath*, 16 Cal.3d 834 (1976). In any event, where COUNTY has had actual notice of the BURNELLS' plight since at least January 8, 2013, such "claim notice" would be a futile exercise. COUNTY has consistently acted to delay or ignore the MHS Defendants conduct toward the BURNELLS, this Court should not permit form to prevail over substance.

Plaintiffs seek equitable, injunctive and declaratory relief against COUNTY. The liability of the COUNTY for its 14th Amendment procedural and substantive due process failures does not rise and fall on whether its vendor or any individual defendant employed by its vendor is lawful or unlawful under State or County rules. It is precisely the constitutionally offensive COUNTY contracts, ordinances, policies and customs which make the *Iqbal* defenses inapposite. The BURNELLS have suffered significant harms in their personal liberty and property rights as a result of the MHS Defendants' plot to steal their horses and destroy the breeding business such that they reasonably may expect to survive motions to dismiss—even if they are required also to amend their complaint. See, e.g., *McFadyen v. Duke University*, 786 F.Supp.2d 887 (2011). If the Court finds these facts and legal theories are not yet sufficiently alleged in the First Amended Complaint, PLAINTIFFS

have a good faith basis to so allege and request the opportunity to further amend their Complaint.

### 1.1   Reasons Why The Motion to Dismiss Must Be Denied.

To state a § 1983 claim, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the person who committed the alleged deprivation was acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

*Monell v. Department of Social Services* 436 U.S. 658, 690–91 (1978) holds that local governments may be liable for damages, as well as declaratory and injunctive relief, whenever "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Defendants (including government entities as legal persons) who seek to enforce invalid state laws and regulations and/or policy always act under color of law. *Lugar v. Edmondson Oil Company*, 457 U.S. 922, 940 (1982); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

As required by Federal Rules of Civil Procedure, Rule 8, Plaintiffs have made simple, concise and direct averments of the facts and claims alleging a defective California statute (Penal Code section 597.1), defective local regulations and policies (particularly sections of the Marin Municipal Code (specifically 8.04.110, 8.04.120(a), (e), and (i) and 8.04.140), the Animal Service Contract and the history of its delegation of authority and course of dealing with MHS, misconduct of each defendant, Plaintiffs' substantial economic harms, damage to Plaintiffs' privacy and reputation interests and request injunctive relief necessary to prevent future deprivations of substantial rights. See *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). Defendants' conduct offends the Constitution of the United States, especially the Fourteenth Amendment guarantee of equal protection and due process of law, without which the BURNELLS cannot be and have not been: free from government intrusion upon their privacy, secure in their reputations, goods and effects, free

from unreasonable searches and seizures and deprivation of property, at liberty to engage in commercial enterprise as they design, enjoy their real and personal property, free from retaliation for voicing disagreement with purported public officials and agencies, permitted fair and timely hearings, and/or free from disproportionate, excessive and irrational fees, fines and penalties and fees and penalties punishing them merely for alleged impecuniosity.

Defendants have fair notice of the plaintiffs' claim and the grounds upon which it rests. See *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996).The relief sought by Defendants (dismissal with prejudice) should be denied.  In any event, dismissal without leave to amend would be an abuse of the Court's discretion.  See *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 - Supreme Court (2014); *Lopez v. Smith*, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

### 1.2   If Defendants' Motion is Granted, Leave to Amend Must Be Permitted

The BURNELLS have adequately plead their cause.

COUNTY argues that it should be excused from this action because State law permits it to contract with humane societies for certain services.  Plaintiffs do not dispute that simple assertion. Plaintiffs again note that Humane Societies' power to enforce animal control laws and appoint persons to enforce those laws is derived and circumscribed by State Statute since at least March 30, 1868.  Since prior to statehood through the present time, California law has required court approval of any person appointed by a humane society to enforce animal cruelty laws, and currently imposes other additional requirements, as well.  Since at least 1997, MHS has failed and refused to comply with those requirements, and COUNTY has knowingly permitted that practice (indeed, it has enabled it with the contrivances of its local ordinances).

 COUNTY's policies, customs and practices however permit the DEFENDANT MARIN HUMANE SOCIETY, unlike lawfully contracted and law abiding humane societies, to engage in unlimited animal welfare enforcement on its *ipse dixit* without California state law requisite judicial supervision and/or limits imposed by the Fourteenth Amendment to due process and liberty from unreasonable government intrusion into animal owners' and keepers' private affairs.  For example, in

its argument, COUNTY does not address that fact that its practice since at least 2000 has been to ignore the failure of MHS to employ Humane Officers. COUNTY ignores that its policy declared by overbroad language and improper delegation of law enforcement authority is a policy that exceeds the very specific and limited grant to humane societies to act.  COUNTY does not address that it ratified and confirmed MHS' decision and authority to steal the BURNELLS' horses (not later than January 8, 2013) as consistent with COUNTY's customs and practices.  Upon information and belief, COUNTY has never instructed its contractor to return the stolen horses.

### 1.3   Marin Municipal Code, Title 8

MHS is a California non-profit humane corporation. Under the contract between MHS and COUNTY, MHS is an independent contractor paid a fixed fee for "animal services." *Metropolitan Water Dist. v. Superior Court* (2002) 92 Cal.App.4th 1112 ("In the traditional independent contractor context, .... [t]he public funds paid the contractor are for a [result], not for the services of individual workers.")  Further to a joint powers agreement, MHS exercises that authority as an independent contractor to and not as a local public agency of COUNTY.  Significantly, the designation of MHS does not expand its powers but rather imposes obligations on MHS beyond those otherwise applicable to it as a humane shelter or matters strictly of local concern. See, Commission on State Mandates, Statement Of Decision Pursuant To Government Code Section 17500 Et Seq.; Title 2, California Code Of Regulations, Division 2, Chapter 2.5, Article 7. Case No. CSM 98-TC-l1 (Jan. 25, 2001).

MHS employees are not government employees (the COUNTY's contract with them explicitly disavows that fact). MHS employees are not animal control officers. Defendant Cindy Machado has sworn in court that it is the policy of COUNTY that an animal services officer have the same powers and authority as an animal control officer.   COUNTY's "Animal Services Officer" is not defined in the California Code. MHS has asserted that its long custom and practice of working for COUNTY ignoring State law concerning proper appointments is justified because it is the COUNTY's policy that an "animal services officer" (employed by itself, a private entity) is legally equivalent to an

"animal control officer" (employed by a government entity). California Penal Code § 830.9 provides:

> Animal control officers are not peace officers but may exercise the powers of arrest of a peace officer as specified in Section 836 and the power to serve warrants as specified in Sections 1523 and 1530 during the course and within the scope of their employment, if those officers successfully complete a course in the exercise of those powers pursuant to Section 832. That part of the training course specified in Section 832 pertaining to the carrying and use of firearms shall not be required for any animal control officer whose employing agency prohibits the use of firearms.

It is COUNTY's policy and practice to authorize MHS to act fully aware that MHS employs no judicially approved and appointed Humane Officers.[1] The authority of MHS' animal services officers that are not humane officers is limited to enforcement of local ordinances. All of the conduct alleged in the Complaint, however, relates to MHS' enforcement of <u>State law</u> as "peace officers" designated as such by COUNTY's ordinances.

COUNTY has impermissibly created a locally defined "officer" out of sync with State and Federal law. Its policy permits a private entity to pursue an activist political agenda without oversight or Constitutional restraint. COUNTY's artifice is not a novel attempt to circumvent State or Federal authority. "Several authorities hold that a public body may not validly [contract for special services] .... where a regular officer or employee thereof is obligated by law to perform such services (see *Skidmore v. West* (1921) 186 Cal. 212, 215 [199 P. 497]) and is willing and able to do so as part of the ordinary professional functions of his position. (15 Ops.Cal.Atty.Gen. 46; 19 Ops.Cal.Atty.Gen. 153; 20 Ops.Cal.Atty.Gen. 21; *Jaynes v. Stockton* (1961) 193 Cal. App.2d 47, 50-56 [14 Cal. Rptr. 49].)" *Montgomery v. Superior Court*, 46 Cal. App. 3d 657, 668 (citations in original). Predictably the very harms a "regular officer" (i.e. a Humane Officer) or government employee (i.e. a Sheriff or Animal Control Officer) are trained to avoid, were inflicted upon BURNELLS.

---

[1] Only qualified humane officers may be appointed to serve as officers with authority to enforce state animal cruelty laws. (Corp Code §§ 14502(a)) and14503).

### 1.3.1 Improper delegation of authority

There is nothing new or novel about the state's imposition of limitations on general law counties, such as Marin, on the exercise of powers conferred on it by the Legislature.

> "But it must be kept in mind that this supremacy of ordinances must be confined within the language of the grant. "Such local police, sanitary or other regulations as are not in conflict with general laws: for neither the constitution nor the legislature has delegated the general power of legislation to counties or municipalities, and the power and duty of regulating these inferior organizations, by general laws, is retained in the legislature.

(Henning, Law Relating to County Government in California, Annotated (Chas. W. Palm Co., 1898) at 18, citing *Ex Parte Campbell*, 74 Cal. 23-25, and cases cited therein; Const. Art. XI, Section 11)

For over 150 years, the State has regulated humane societies and placed limitations on the authority of their employees (or others appointed by them) to enforce state laws related to the care and treatment of animal. Any reading of county code investing such societies and its employees with authority specifically denied them by the Legislature cannot stand. Here, the only way in which Marin Municipal Code§ 8.04 can be harmonized with state law is to recognize that the requirement that MHS appoint "proper" persons is a requirement that it have appointed at least one humane officer in compliance with Corporations Code § 14502.

Further, the authority granted by the ordinance is contrary to California law and preempted as it purports to grant employees of the Marin Humane Society peace officer powers.

> we hold that the subject of who may exercise the powers of a peace officer is one of statewide concern, and that, therefore, the director exceeded his power in granting peace officer status to custodial officers.

*County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 878-879.[2]

---

[2] See also, *Serv. Emp. Internat. v. City of Redwood City* (1995) 32 Cal. App. 4th 53, 63 ("employing agency's discretion does not extend to having employees that chapter 4.5 does not designate nevertheless act in the capacity of peace officers"; *Gauthier v. City of Red Bluff* (1995) 34 Cal. App. 4th 1441, 1445 ("only very specific persons are deemed to be 'peace officers.'"; *id* at n. 3 "requirements of Penal Code sections 832, 832.3, and 832.4 are … a condition of the exercise of peace officer authority. (*Applicability of the Public Safety Officers Procedural Bill of Rights Act,* 63 Ops.Cal.Atty.Gen. 829, 833 (1980)."; *Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 577 police department animal control officers enforcing animal laws are engaged in active law enforcement only "in loose sense," and are not in "active law enforcement service"); *Abbate v.*

7

OPPOSITION TO MOTION TO DISMISS (Doc # 50)                          Case No. 3:14-cv-05636 JSC

Further still, the authority granted to the private Marin Humane Society constitutes an improper delegation of legislative power and lacks adequate safeguards to prevent abuse of the authority conferred.[3] Such improper delegation includes but is not limited to allowing this private corporation to the power of appointment of "suitable persons" to act in a law enforcement capacity. Marin Municipal Code 8.04.110. The ordinance's delegation of appointment authority is without legislative guidance or check, and as applied cannot be harmonized with the State's imposed limitations on the authority of humane societies to appoint persons to enforce the animal welfare laws. See, Cal. Corp. Code § 14502. "When it comes to private entities, however, there is not even a fig leaf of constitutional justification" supporting the delegation of powers. *Department of Transportation* v. *Association of American Railroads,* 575 U. S. ___, ___, 135 S.Ct. 1225, 1237 (2015). Such delegations threaten liberty and thwart accountability by empowering entities that lack the structural protections of government. See *Department of Transportation* v. *Association of American Railroads,* 575 U. S. ___, ___-___ (2015) (ALITO, J., concurring) (slip op., at 6-7); *id.,* at ___-___ (THOMAS, J., concurring in judgment) (slip op., at 2-3); *Mistretta* v. *United States,* 488 U. S. 361, 417-422 (1989) (SCALIA, J., dissenting).

### 1.4 Whatever Explicit Limits Imposed on MHS by The Law As It Stands, County Permits MHS to Ignore With Impunity

In the BURNELLS' case, MHS ignored what limits COUNTY has put on MHS' regulatory and enforcement authority. MHS has authority to deal with nuisance, stray and abandoned animals. It licenses household pets like cats and dogs. Only with respect to certain "commercial animal establishments" may MHS issue permits and "establish such conditions as may be necessary to provide for the humane care and treatment of animals." MMC 8.04.240. Livestock establishments

---

*County of Santa Clara* (2001) 91 Cal. App.4th 1231, 1239, correctional officers not deputy sheriffs despite agreement).

[3] Delegations of authority to private parties are particularly suspect. See, *Bayside Timber Co. v. Board of Supervisors,* 20 Cal.App.3d 1, 11-12 (1971). A statute entrusting one private entity with the power to regulate another "undertakes an intolerable and unconstitutional interference with personal liberty and private property" violating due process. *Carter v. Carter Coal Co.* (1935) 298 U.S. 238, 311.

are exempted from MHS' permitting and regulatory authority.  MMC 8.04.020(d)(3).

The BURNELLS maintain breeding livestock and operates a livestock breeding business.  MHS has no regulatory or standard setting authority over BURNELLS' animal husbandry practices and MHS can point to no law that sets forth a legal standard regarding feed, shelter and veterinary care for breeding livestock or horses that justify its conduct toward her.  Still, the crux of their claim of justification for seizing and impounding her livestock is that the horses lived out of doors, got muddy in rainy weather, and demonstrated fluctuations of weight which were not dangerous and merely reflected normal seasonal and breeding cycles.

Tacitly acknowledging it acted outside the limits of its authority under COUNTY's municipal code regarding livestock,[4] MHS has relied on California Penal Code section 597.1 as the source of its legal authority to investigate and to enforce California State Law in its actions concerning the BURNELLS.  It claims it is enabled to do so because Marin Municipal Code also purports to permit the County's "animal services agency" to enforce California state law without also requiring such agency to employ only those individuals who comply with State mandated training, continuing education and appointment criteria.[5]  Indeed, even under Penal Code § 597.1 there is no exemption to counties and municipalities to designate any other than a narrow class of persons—peace officers (Pen. C. §§ 830, 830.9), animal control officers (Pen. C. §§ 241(b), 11165.7(31)(A)) and humane officers (Corp. C. § 14502) to enforce its provisions or seize animals without a warrant. DEFENDANTS CINDY MACHADO ("MACHADO"), STEVE HILL ("HILL") and MICHELLE ROGERS ("ROGERS") are MHS' employees, but are not peace officers, animal control officers or humane officers.

---

[4] No later than October 2, 2012, ROGERS acknowledged that JILL BURNELL's horses and livestock breeding business did not fall within MHS's regulatory authority.  (1/24/13 Testimony by Michelle Rogers, 193:9-14).  Nonetheless, she and her supervisors HILL and MACHADO met two times per week for the next several months to discuss the BURNELL "case." (1/24/13 Testimony by Steve Hill, 137:12-25).
[5] That contract requires MHS to follow state law, to employ suitable persons and to obtain licenses and permits necessary to lawfully perform the services it contracts to perform.

COUNTY's policy to cede peace officer status and the authority to enforce state law to a private vigilante group and COUNTY's failure to specify that its contractor's personnel had adequate instruction, training and supervision, or that such personnel met all provisions of law relating to animal control of the State of California (including but not limited to Corporations Code section 14502) contributed to the deprivation of BURNELLS' civil rights.  In addition, COUNTY's contract and ordinances related to its Animal Services authority are so overbroad that MHS claims here that COUNTY authorizes seizures, impoundments and fines that cannot meet constitutional muster.  Further, COUNTY negligently appointed BURNHAM as a County Hearing Officer, even though he did not meet such appointment's minimum statutory qualification.

## 2   CONCLUSION

COUNTY is properly subject to 1983 liability for policies, customs, contracts, ordinances, and appointments caused or contributed to the deprivation of rights, privileges or immunities secured to Plaintiffs by the Constitution.  Plaintiffs alleged the Animal Services Contract and local ordinances, among other things, that plausibly show how a custom or policy of COUNTY caused or contributed to the alleged constitutional violations alleged.  Rule 8's requirement for a simple and concise averment has been met.

For all of the above stated reasons and authorities, BURNELLS respectfully request that COUNTY's Motion to be Dismiss be denied, or in the alternative, that the BURNELLS be given leave to amend their complaint.

Dated: September 15, 2015                    WEEMS LAW OFFICES

    /s/ Margaret M. Weems
Margaret M. Weems,
Attorney for Defendant,
JILL BURNELL AND ALEX BURNELL