Robert C Weems (CA SBN 148156)
Margaret M. Weems (CA SBN 164030)
WEEMS LAW OFFICES
769 Center Blvd., PMB 38
Fairfax, CA 94930
Ph: 415.881.7653
Fx: 866.610.1430
   rcweems@weemslawoffices.com
   mmweems@weemslawoffices.com

Attorneys for Plaintiffs
   JILL BURNELL AND ALEX BURNELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL BURNELL AND ALEX BURNELL,<br><br>  Plaintiffs,<br><br>v.<br><br>MARIN HUMANE SOCIETY, COUNTY OF MARIN, NANCY MCKENNEY, CINDY MACHADO, STEVE HILL, MICHELLE ROGERS, BRUCE WAGMAN, ALBERT BURNHAM, NATHAN KEEFER, DINA RICCI, and GENEVIEVE GHILOTTI,<br><br>  Defendants. | Case No. 3:14-cv-05636 JSC<br><br>SUPPLEMENT TO OPPOSITION TO MOTION TO DISMISS [DOC #47] BY MHS DEFENDANTS<br><br>Hearing: October 8, 2015<br>Time: 9:00 a.m.<br>Judge: Jacquelyn Scott Corley<br>Courtroom: F, 15th Fl (SF) |

## TABLE OF CONTENTS

1 INTRODUCTION ........................................................................................................................1
   1.1 Legal Standard ...............................................................................................................1
   1.2 The First Amended Complaint Pleads Plausible Liability Theories...................................2
   1.3 A Conspiracy To Steal Plaintiffs' Horses Under Color of Law And To Benefit MHS Is Sufficiently Alleged .........................................................................................................2
2 SECTION 1983 CREATES A PRIVATE RIGHT OF ACTION TO ENFORCE THE 14TH AMENDMENT AGAINST THE MHS DEFENDANTS AS CONSPIRATORS ..........................3
   2.1 There is No Heightened Pleading Standard Related To The 14th Amendment.....................4
   2.2 The FAC Alleges COUNTY Policies And Customs .........................................................5
   2.3 Conspiracy Allegations Sufficient To Give Defendants Notice Of Nexus/Joint Action.....6
3 DEFENDANTS' AUTHORITY DISTINGUISHABLE BY FACTS OR PROCEDURAL POSTURE...................................................................................................................................8
   3.1 Defendant Keefer Knowingly Joined In The Conspiracy....................................................8
   3.2 Fifth Amendment Claims...................................................................................................9
   3.3 False Light/Defamation ...................................................................................................11
   3.4 Emotional Distress Theory of Liability Is Plausible Given Alleged Facts........................12
   3.5 No MHS Defendant Is Entitled To Immunity As They Are Private Entity Employees....13
   3.6 MHS Liability Does Not Rest On Any Purported Judicial Capacity ................................14
4 CONCLUSION.........................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Alexander* v. *United States,* 509 U. S. 544 (1993)

*Anderson v. Smith* 2009 U.S. Dist. LEXIS 58804 (E.D. Cal. July 10, 2009)

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, , 173 L.Ed.2d 868 (2009)

*Austin* v. *United States,* 509 U. S. 602 (1993)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)

*Blockburger v. United States,* 284 U.S. 299 (1932)

*Broam v. Bogan* , 320 F.3d 1023, (9th Cir. 2003)

*Burton v. Wilmington Parking Auth.,* 365 U.S. 715 , 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)

*Camara v. Municipal Court of City and County of San Francisco*, 387 US 523 (1967)

*Cameron v. Johnson*, 390 U.S. 611 (1968)

*Carrera v. Bertaini*, 63 Cal. App. 3d 721 (1976)

*Clemes v. Del Norte County Unified School District*
  1995 U.S. Dis. LEXIS 14298 (N.D. Cal. Sept. 19, 1995)

*Coates v City of Cincinnati*, 402 U.S. 611 (1971)

*Collins v. City of Harker Heights Tex.,* 503 U.S. 115 (1992)

*Connally v. General Construction Co.* 269 U.S. 385 (1926)

*Cross v. Wells Fargo Bank, N.A.* 2011 U.S. Dist. LEXIS 141944 (C.D. Cal. Dec. 9, 2011)

*Daniels v. Williams*, 474 U.S. 327 (1986)

*Dominguez v. County of Kern*, 2014 U.S. Dist. LEXIS 80335 (E.D. Cal. June 9, 2014)

*George v. Sonoma County Sheriff's Dept.*
  2009 U.S. Dist. LEXIS 24822 (N.D. Cal. March 12, 2009)

*Georgia v. McCollum*, 505 U.S. 42 (1992)

*Gillespie v Civiletti*, 629 F.2d 637 (9th Cir. 1980)

*Hart v. Parks* 450 F.3d 1059 (9th Cir. 2006)

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)

*Jackson v. Silicon Valley Animal Control Authority*
  2008 U.S. Dist. LEXIS 76837 (N.D. Cal. Oct. 2, 2008)

*Jiminez v. Dtrs St. Francis LLC* 2013 U.S. Dist. LEXIS 101481 (N.D. Cal. July 19, 2013)

*Johnson v. Duffy* 588 F.2d 740 (9th Cir. 1978)

*Johnson v. State of California* 207 F.3d 650 (9th Cir. 2000);

*Khalafala v Scully* 2008 U.S.Dist. LEXIS 101590 (C.D. Cal. Dec. 16, 2008)

*Lacey v. Maricopa County* 693 F.3d 896 (9th Cir. 2012)

*Macias v. City of Clovis* 2014 U.S.Dist. LEXIS 107621 (E.D. Cal. 2014)

*Miller v. Harris County* 2011 U.S. Dist. LEXIS 2011 (S.D. Texas Sept. 22, 2011)

*Mnatsakanyan v. California Professional Corp. Cavalry*
    (not reported) 2013 WL 10156242, * 9 (C.D. Cal. Jan. 22, 2013)

*Molina v. Harrington* 2012 U.S. Dist. LEXIS 84128 (C.D. Cal. May 22, 2012)

*Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998)

*Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895 (9th Cir. 2007).

*Reno v. Flores*, 507 U.S. 292 (1993).

*Richardson v. McKnight*, 521 U.S. 399 (1997)

*Sable Communications v. Pacific Tel. & Tel. Co.,* 890 F.2d 184 (9th Cir.1989)

*Sears v County of Monterey* , 2012 U.S. Dist. LEXIS 13501 (N.D. Cal. Feb. 3, 2012)

*See v. Seattle*, 387 US 541 (1967)

*Sparling v. Daou*, 411. F.3d 1006 (9th Cir. 2005).

*Survine v. Cottle*, 2013 U.S. Dist. LEXIS 3057 (E.D. Cal. Jan. 8, 2013)

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)

*Taylor v. Regents of the Univ. of Cal.* 993 F.2d 710 (9th Cir. 1993).

*United States v. O'Brien* 391 U.S. 367 (1968)

*Vincent v. Trend Western Technical Corp.,* 828 F.2d 563 (9th Cir.1987)

*Walsh v. American Medical Response*, 2014 U.S.Dist. LEXIS 69279 (E.D. Cal. May 20, 2014)

*Williamson* v. *Lee Optical of Okla., Inc.,* 348 U. S. 483 (1955)

*Wilson v. Florida Department of Revenue*
    (not reported) 2015 WL 136557 (N.D. Cal. Jan. 8, 2015)

## Rules and Statutes

42 USC 1983

Cal. Penal Code § 597.1

Fed. R. Civ. P. 15(a)

3
SUPPLEMENT TO OPPOSITION TO MOTION TO DISMISS        Case No. 3:14-cv-05636 JSC

# 1 INTRODUCTION

MHS Defendants cited 17 cases in support of their Motion to Dismiss Plaintiffs' First Amended Complaint, etc (Dkt 47) to case law unavailable to the parties or the court without two different private, paid for subscription services. These cases (unavailable to Plaintiffs or their counsel) who do not subscribe to these services were particularly significant to Defendants' arguments in connection with the Motion to Dismiss. In response to Plaintiffs' note (Dkt 55 at 1, n1) highlighting that fact, over 200 pages of previously unavailable precedent was delivered by email (the day after Plaintiffs' Opposition was due and filed). The previously unavailable case law is too voluminous to respond to solely through oral argument. In this Supplement to Plaintiffs' Opposition, the previously unavailable materials are addressed.

## 1.1 Legal Standard

In deciding a Rule 12(b)(6) motion, the court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of* Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Plaintiffs note that even Defendants' authority supports the court's authority to consider matters raised in opposition to a motion to dismiss to decide granting leave to amend. *Walsh v. American Medical Response*, 2014 U.S.Dist. LEXIS 69279 (E.D. Cal. May 20, 2014) at *18 citing *Broam v. Bogan*, 320 F.3d 1023, 1026 n. 2 (9th Cir. 2003). Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The surviving plaintiff has alleged facts sufficient to "nudge his claims ... across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570). When the factual content (assumed true even when doubtful) and reasonable inferences therefrom support a right to relief, the complaint survives.

Dismissal with prejudice requires a finding by the court that the pleading cannot possibly be cured by the allegation of other facts. *Macias v. City of Clovis* 2014 U.S.Dist. LEXIS 107621 (E.D. Cal. 2014) at *8. Otherwise, dismissal without prejudice is warranted, unless it is clear the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411. F.3d 1006, 1013 (9th Cir. 2005). The motion for dismissal with prejudice should be denied.

### 1.2 The First Amended Complaint Pleads Plausible Liability Theories

Plaintiffs Jill and Alex Burnell have alleged facts to support a plausible conspiracy theory, identifying the conduct of the individual participants, where the MHS Defendants succeed in stealing four breeding horses from their property under color of (COUNTY) policies and customs, to enforce a state animal welfare statute (PC 597.1), itself constitutionally invalid.

COUNTY's customs and policies, memorialized by contract, local ordinance and years' observance in practice, allow private entity MHS and its employees to pretend to humane officer, peace officer and/or public employee "animal control" officer status even though MHS is not a law enforcement agency, is not a local public agency, and its employees are not public employees. *Hart v. Parks* 450 F.3d 1059, 1071 (9th Cir. 2006) (political entity may be held liable under § 1983 for constitutional violations occurring pursuant to an official government policy, custom or practice). COUNTY's policies and customs of overbroad, impermissible delegation of authority to MHS, is a color of law extended to non-Humane Officer humane society employees. COUNTY's delegation of unlimited authority to conduct warrantless administrative searches if an animal is involved is also constitutionally untenable. See, *Camara v. Municipal Court of City and County of San Francisco*, 387 US 523 (1967); *See v. Seattle*, 387 US 541 (1967). Plaintiffs were injured as a result of COUNTY's customs, practices and policies by the original removal of their horses and MHS' refusal to return the horses, alive, healthy, useful for their commercial purpose and in a timely fashion.

### 1.3 A Conspiracy To Steal Plaintiffs' Horses Under Color of Law And To Benefit MHS Is Sufficiently Alleged

Plaintiffs have described a conspiracy that was motivated by personal animosity (especially

Rogers, Keefer, Ricci and Ghilotti), an extremist political agenda (especially MHS and Wagman), and/or self profit including augmented reputation as successful, aggressive animal "rescuers" and to increase financial donations (especially MHS, McKenney, Machado, Hill, Rogers and Wagman) perpetrated under the color of law.  In the course of their scheme, the defendants caused Plaintiffs to be deprived of numerous, established liberty, property and due process rights secured under the Constitution of the United States including its Amendments.  Plaintiffs were damaged thereby.  Those facts and theories are described in the First Amended Complaint (FAC).

Defendants' motion should be denied.

## 2   SECTION 1983 CREATES A PRIVATE RIGHT OF ACTION TO ENFORCE THE 14TH AMENDMENT AGAINST THE MHS DEFENDANTS AS CONSPIRATORS

Although Defendants cite *Survine v. Cottle*, 2013 U.S. Dist. LEXIS 3057 (E.D. Cal. Jan. 8, 2013) (at Dkt 47, 8:21-23) for the proposition that the Burnells' complaint should be dismissed without prejudice, Defendants fail to note that the *Survine* plaintiffs were permitted to amend their complaint.  *Id.* at *52-53.  Defendants' contention that Plaintiffs "fail to connect" any alleged facts to a "violation of protected rights" is wrong. The FAC connects the substitution of MHS Defendants animal husbandry opinions for those of the BURNELLS, the horses' owners and keepers, to justify a warrantless seizure under the invalid California Penal Code 597.1.  *United States v. O'Brien* 391 U.S. 367 (1968) (law may be invalid if not content neutral toward expressive conduct)[1].  The FAC connects the COUNTY policies to the overbroad, improper delegation of authority to enforce state law to MHS, including warrantless searches and seizures, and the custom and practice to authorize

---

[1] The right to privacy, liberty and enjoyment of property (here breeding horses) is not a privilege or a government benefit and is not created by statute. It is fundamental.  Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper government objective.  *Coates v City of Cincinnati*, 402 U.S. 611, 613 (1971) invalidated a statute because the word "annoying" was deemed to lack due process insertion of fair warning.  It criticized the court below and examined its unexplained conclusion that "the standard of conduct which it specifies is not dependent upon each complainant's sensitivities."  However, the lower court "did not indicate upon whose sensitivity a violation does depend" and where "Men of common intelligence must necessarily guess at its meeting" the statute must be invalid.  *Id.* citing *Connally v. General Construction Co.* 269 U.S. 385, 391 (1926).  See also, *Cameron v. Johnson*, 390 U.S. 611, 616 (1968).

its animal services agency not to comply with state law (for example) regarding training and appointment of Humane Officers. The FAC describes facts of a campaign of falsehoods and intimidation tactics culminating in the removal of commercial livestock from the BURNELLS' possession and control. Defendants attack the FAC by ignoring that 42 USC 1983 is based upon the Fourteenth Amendment and creates a private right of enforcement concerning deprivations of rights that are accomplished under the color of law. *Gillespie v Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

### 2.1 There is No Heightened Pleading Standard Related To The 14th Amendment

Plaintiffs have alleged a conspiracy that resulted in the theft of commercial livestock under an invalid state statute (Cal. Penal Code § 597.1). Even if 597.1 is valid, MHS and its employees were not authorized persons to act upon it, relying on invalid COUNTY ordinances and policies to cover up their fraudulent impersonation of authorized persons, including peace officers and animal control officers. Further, Defendants ignore the extraordinary delays created by MHS' knowing (and fraudulent) conduct which delays undermine even their pretense of providing an adequate post-seizure/deprivation remedy. To distinguish whether Defendants are caused to answer a procedural or substantive due process right under the 14th Amendment is a matter of drafting (if necessary) and not futile. The BURNELLS' liability and damage theories are plausible given the facts alleged. Defendants' motion should be denied.

A Section 1983 claim gives injured plaintiffs access to the federal court to right wrongs committed under state law under the Fourteenth Amendment. 14th Amendment Due Process Clause protects "property interests, which "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Wilson* at *9. BURNELLS also contend their interest in their seized horses are a recognized property interest interfered with by the DEFENDANTS. A 14th Amendment substantive due process claim

> forbids the government from depriving a person of life, liberty or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998) (internal citations omitted) It "protects individual liberty against 'certain government actions regardless of the fairness of the procedures

used to implement them." *Collins v. City of Harker Heights Tex.,* 503 U.S. 115, 125 (1992) quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986) Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.' *Reno v. Flores*, 507 U.S. 292, 302 (1993).

*Wilson v. Florida Department of Revenue* (not reported) 2015 WL 136557 (N.D. Cal. Jan. 8, 2015) at *8.

It is BURNELLS' contention that their associational, commercial, and private management decisions related to the care, custody and control of their breeding horses are fundamental liberty interests and that Defendants' conduct interfered with those interests.[2]

## 2.2  The FAC Alleges COUNTY Policies And Customs

No Municipal Code violations supported the MHS Defendants' warrantless seizures.  MHS Defendants argue that the FAC does not point to COUNTY policies and customs. See, Dkt. 47 at 16.  That is wrong.  At paragraph 6, FAC is more than a formulaic recitation of the COUNTY policies and customs making an improper delegation of authority to enforce <u>state</u> animal welfare laws, failure to designate proper persons necessarily judicially appointed if employees of a Humane Society (i.e. Humane Officers, to enforce state animal welfare laws), and the improper delegation of public employee peace officer and animal control officer authority to private entity "animal services" officers.[3]  COUNTY's long standing practices confirm that policy, COUNTY's Animal Services Contract with MHS (signed by McKenney) confirms those policies, COUNTY's Municipal Ordinances confirm those policies, Machado and Rogers have testified under oath regarding the

---

[2] BURNELLS allege in the FAC that MHS seeks irrational and excessive fines and that irrational and excessive fines and fees have been imposed upon them.  BURNELLS have challenged the presumed forfeiture of any horse for not paying those fees.  The Due Process and Equal Protection Clauses also protect individuals from sanctions which are downright irrational. *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U. S. 483 (1955). The Eighth Amendment protects against excessive civil fines, including forfeitures. *Alexander* v.*United States,* 509 U. S. 544 (1993); *Austin* v. *United States,* 509 U. S. 602 (1993).

[3] The FAC specifically refers to COUNTY's policies, customs and practices (and how they enabled MHS to act under "color of law") at paragraphs 6, 8,10, 20, 28, 30, 31, 32, 33, 24 and 76.  Compare *Domingues v. County of Kern*, 2014 U.S. Dist. LEXIS 80335 (E.D. Cal. June 9, 2014) at *16 [Dkt 47 at 16].

existence of those policies, customs and practices.  It is astonishing that the COUNTY's policies, customs and practices are challenged by the MHS defendants as they have consistently pointed to their Contract with the COUNTY, its ordinances and customs as their authority and obligation to act. On the success of that argument, Machado and Rogers were permitted to testify as Prop 115 (CA Penal Code 872(b)) at the BURNELLS' preliminary hearing in Marin County Superior Court.

Defendants cite *Macias v. City of Clovis* 2014 U.S. Dist. LEXIS 107621 (E.D. Cal. Aug. 4, 2014) at *17 [Dkt 47 at 16] for the proposition that alleging a custom is insufficient pleading.  The FAC fairly puts Defendants on notice of the claim against them, and Defendant' motion should be denied for that reason.  *Id.* at *15-16.  Like the court in *Macias*, in considering the allegations of the FAC, if further specificity be required Plaintiffs here can also refer to admissions by Defendants in other proceedings, to sections of the COUNTY contract, and to provisions of the COUNTY municipal code. *Id.* at *17-18.

### 2.3 Conspiracy Allegations Sufficient To Give Defendants Notice Of Nexus/Joint Action

"A civil rights conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Survine* at *24.  Any person (like Wagman, Keefer, Ricci and Ghilotti) who causes any citizen to be subject to a deprivation of rights, by for example, setting in motion a series of acts by others she knew or should have known would result in the deprivation, does an affirmative act, participates in another's affirmative act or omits to perform an act may be liable in the civil rights conspiracy. *Lacey v. Maricopa County* 693 F.3d 896, 915-916 (9th Cir. 2012) citing *Johnson v. Duffy* 588 F.2d 740, 734-744 (9th Cir. 1978).   Plaintiffs are not obligated to describe "which blow [they] contend was landed by which officer." *Dominguez v. County of Kern* 2014 U.S.Dist. LEXIS 80335, *16 (E.D. Cal. June 9, 2014) [Dkt. 47 at 16]  It is the nature of conspiracies that their

mechanisms and management are kept hidden from view and requiring to connect each act of each participant to each violation separately from the conspiracy would place an impossible pleading burden on the Plaintiffs.

A person may become a state actor by conspiring with a state official, or by engaging in joint activity with state officials. *Sable Communications v. Pacific Tel. & Tel. Co.,* 890 F.2d 184, 189 (9th Cir.1989) (defendant sought the aid of law enforcement officials in order to use further procedures that would violate the plaintiff's first amendment rights). [4] A person may also become a state actor by becoming so closely related to the State that the person's actions can be said to be those of the State itself. That might be found because the nexus is so close as to cause the relationship to be symbiotic. *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961); *Vincent v. Trend Western Technical Corp.,* 828 F.2d 563, 569 (9th Cir.1987). It might also be for such other reasons as performing public functions or being regulated to the point that the conduct in question is practically compelled by the State. *Vincent,* 828 F.2d at 568-69.  See also, *Walsh v. American Medical Response*, 2014 U.S.Dist. LEXIS 69279 (E.D. Cal. May 20, 2014) at * 27-28 (Private entities can be liable for constitutional violations under certain circumstances.)

---

[4] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (Liability under § 1983 arises upon a showing of participation by the defendant).  That a defendant was pursuing a private goal does not preclude a finding that the defendant acted under color of state law. See *Georgia v. McCollum*, 505 U.S. 42, 54 (1992) (noting, in a case involving a question of "state action" for purposes of the Fourteenth Amendment, that "[w]henever a private actor's conduct is deemed 'fairly attributable' to the government, it is  likely that private motives will have animated the actor's decision"). See also, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974); *Richardson v. McKnight*, 521 U.S. 399, 413 (1997).  The alleged conspiracy concerns enforcement of an invalid state statute-invalid due to its overbroad terms or as applied here by enforcement through unauthorized, unqualified individuals and/or because they acted without a warrant and there is no sufficient post-deprivation process in this case.

7

SUPPLEMENT TO OPPOSITION TO MOTION TO DISMISS                                  Case No. 3:14-cv-05636 JSC

The FAC describes the acts of each defendant—either purporting to conduct themselves as a state actor, claiming they were compelled to conduct themselves as a state actor, or putting into motion a series of events that make them indistinguishable from the purported state actor-- that contributed to the success of the DEFENDANTS' unlawful conspiracy and the damage to Plaintiffs. Compare, Dkt. 47 at 8 citing *Walsh.* The motion to dismiss on the grounds Plaintiffs failed to allege facts sufficient to describe the conspiracy or to tie that conspiracy to the deprivation of recognized Constitutional rights should be denied.

### 3   DEFENDANTS' AUTHORITY DISTINGUISHABLE BY FACTS OR PROCEDURAL POSTURE

#### 3.1   Defendant Keefer Knowingly Joined In The Conspiracy

Unlike the Plaintiff in *Jiminez v. Dtrs St. Francis LLC* 2013 U.S. Dist. LEXIS 101481 (cited by Defendants at Dkt. 47 at 14) the BURNELLS have alleged facts establishing a conspiracy among Defendants joined by Defendant KEEFER.  FAC at paragraph 21 alleges:

> MHS has an ongoing business relationship with KEEFER and the veterinary practice of which he is a co-owner.  He participated in warrantless searches of Plaintiffs' property and without Plaintiffs' consent and he participated in warrantless seizures of Plaintiffs' breeding livestock without consent or exigency.   Jill Burnell and KEEFER had a pre-existing dispute between them concerning her complaint to his supervisor that he failed to provide competent veterinary service for her horse suspected of abdominal pain.  KEEFER informed ROGERS that he was not the appropriate person to evaluate Plaintiffs' horses on December 27, 2012. ROGERS demanded that KEEFER accompany her to the Plaintiffs' property falsely stating that there were injured horses on the Burnells' property that had not received veterinary care.  On December 27, 2012 while at Plaintiffs' Marin County property, KEEFER failed to examine properly any horse present and failed to preserve evidence of the Plaintiffs' horses' good condition and did not make an accurate, contemporaneous medical record of his examination as his license requires him to do.  KEEFER knew or should have known that ROGERS had an improper purpose calling him to the Plaintiffs' property, not to provide veterinary care, not to provide sound clinical judgment, not to create an accurate medical record, and only to interfere with Plaintiffs' own veterinarian's access to the horses.  Once informed that the Burnells' horses were under veterinary care, KEEFER should have left the property; as he has acknowledged previously, his purpose and authority to be at the property or offer opinions regarding the Burnells' horses was at best murky. KEEFER knowingly and voluntarily allowed his presence to provide a patina of legitimacy to an otherwise unlawful and malicious endeavor by the other MHS Defendants.

In good faith, BURNELLS could allege additionally that ROGERS' telephone notes days prior to

December 27, 2012 indicate that Dr. Keefer encouraged her to "go get them" (referring to the BURNELLS). These allegations are sufficient to support a "joint action" test because KEEFER joined in concerted action with the purported state actors (MHS, Machado, Hill and Rogers) "to effectuate a particular deprivation of constitutional rights." KEEFER did more than make an appearance at the scene, he was an active participant in the seizure and an integral part of its success.

### 3.2   Fifth Amendment Claims.

The Fifth and Fourteenth Amendments protect Plaintiffs' right to due process of law including but not limited to an unbiased tribunal, notice of proposed state action and grounds, the opportunity to present reasons to oppose, rights to present evidence, to know opposing evidence, to examine adverse witnesses, that decisions are based on evidence, the opportunity to be represented by counsel, to have a record and that decision maker prepare findings of fact and conclusions of law. It protects against repeated prosecutions for the same alleged offense.

In June 2013, a Marin County Superior Court judge found no justification under 597.1 to justify the seizure of the four horses (overturning the original administrative hearing) and ordered the horses returned to BURNELLS among other relief. Despite that fact, MHS through Machado and Rogers persisted to support criminal prosecution before a different Superior Court judge. Ultimately all charges concerning the seized horses were dismissed—no criminal liability found.[5] MHS again refused to return the seized horses claiming the authority of a civil appeal bond and the criminal court refused to rule on the matter. BURNELLS were subjected to another (faulty) 597.1 hearing in March 2015. The horses have not been returned. At issue in each proceeding was the same charge considering the criminal neglect of the four seized horses measured under the standards of 597.1. Each time a qualified judicial officer has heard the evidence, the result is favorable to the BURNELLS yet they continue to be subjected to prosecution and penalty by MHS. This is not a

---

[5] It was those dismissals that Defendant Wagman sought to discredit through his statements and interviews to the press as alleged at FAC paragraph 19.

matter of the Legislature's right to impose cumulative sentences. This describes multiple criminal prosecutions of the same alleged offense because MHS doesn't like the outcome when it does not control the decision maker and does not control the procedural rules (notice, venue, exculpatory disclosures, access to witnesses, protection from self incrimination, etc.) *Molina* does not help Defendants.

It is the BURNELLS' contention that all DEFENDANTS conspired to steal their horses and deprive them of liberty, property and due process rights.[6] The FAC describes in detail how each defendant contributed to the conspiracy and acted under the color of law. Defendants' cite [Dkt at 9] *Molina v. Harrington* 2012 U.S. Dist. LEXIS 84128 (C.D. Cal. May 22, 2012) at *56 to describe the limits to the Fifth Amendment Double Jeopardy prohibition. The case law cited is a Report and Recommendation (yet subject to opposition and final ruling) concerning a habeas petition after jury trial and sentencing of petitioner for two counts of first degree murder. The petitioner contested findings on motions to suppress, related to Miranda rights and other faults with his criminal trial where he was found guilty "beyond a reasonable doubt." The Fifth Amendment claim concerned sentencing enhancements.

The *Molina* reasoning supports BURNELLS claim that they were subjected to Double Jeopardy. First, seizure of the horses was made under a claim of violation of a state criminal statute concerning animal welfare, and the MHS Defendants (especially Machado, Hill and Rogers) considered their investigation of BURNELLS under 597.1 as a "criminal" investigation. The 597.1 hearing was mandatory and preliminary to seeking criminal prosecution by the explicit language of 597.1. Privity conditions may not be strictly met for collateral estoppel purposes, but MHS' investigation, allegations (overstated and baseless) and self-serving hearsay evidence was the totality of the

---

[6] Plaintiffs concede that Alex Burnell was not a named party in the administrative hearings, although he participated in each together with his wife, Jill Burnell, as his interests were also put in jeopardy in those proceedings. He was nonetheless named as a fully participating defendant in the criminal prosecution of the allegations of abuse of horses, including abuse/neglect of the four seized horses. All allegations of wrongdoing were dismissed as to Alex Burnell in the criminal action.

People's case, initiated by Machado's February 2013 "referral."  The *Blockberger* test is however satisfied.  It is the same evidence, for same statutory offense, that has been prosecuted.  *Blockburger v. United States,* 284 U.S. 299 (1932)

*Miller v. Harris County* 2011 U.S. Dist. LEXIS 2011 (S.D. Texas Sept. 22, 2011) [cited at Dkt 47 at 9] has not been relied upon by any published case and BURNELLS can find no related Ninth Circuit opinions which considered it.  *Miller* does not apply here because those facts and allegations clearly did not pass the *Blockberger* test.

### 3.3   False Light/Defamation

Defendants cite *Sears v County of Monterey*, 2012 U.S. Dist. LEXIS 13501, *32 (N.D. Cal. Feb. 3, 2012) for the proposition that the false light tort requires pleading specific statements or publication of information.  In fact, in the FAC Plaintiffs allege numerous false, invasive and defamatory statements made on the MHS website and three other internet sites between November 24, 2012 and June 30, 2014 as well as false statements  in regard to probation performance through June 2015, false statements in the investigatory report/referral to the Marin County District Attorney in February 2013, and material misrepresentations, omissions and evasions, particularly at the faulty administrative hearings in January 2013 *(inter alia* FAC ¶¶ 11, 18, 19, 22, 35 and 37).  If further specificity is required, the Plaintiffs have a good faith basis to amend the FAC to complete the allegations. The *Sears* plaintiffs were permitted leave to amend.  *Id.* at *33.

*Mnatsakanyan v. California Professional Corp. Cavalry* (not reported) 2013 WL 10156242, * 9 (C.D. Cal. Jan. 22, 2013) was cited by Defendants that dismissal was warranted because allegations were not sufficient to be considered "publicity." Dkt 47 at 23.  In that case, debt collection practices and consumer credit reporting was at issue. Where the facts plead by that plaintiff were not fatal to the liability theory of the complaint, the claims stood on their merits or plaintiff was permitted to amend. The defamation and libel claims were dismissed because Mnatsakanyan did not allege any statements by any defendant—the conduct complained about was receiving, reading or review of his credit report. In contrast, BURNELLS have alleged the conspirators' numerous false statements

claiming criminal conduct related to the BURNELLS' care and management of four seized horses[7] published at least on MHS' website, on internet sites of interest to the horse enthusiast (RateMyHorsePro and COTH) and magazines of interest to individuals interested in competition of horses (The Chronicle of the Horse).

*Wilson v. Florida Department of Revenue* (not reported) 2015 WL 136557 (N.D. Cal. Jan. 8, 2015) considered the review of a *pro se* plaintiff's complaint for adequacy pursuant to Section 1915. Leave to amend was granted. It notes that government liability in a Section 1983 claim may be found where an official government policy causes the state actor to violate another's constitutional rights. A policy may be broadly construed to include a long standing practice or custom that equates to a "standard operating procedure" of the local agency. *Id.* at *6. The court in *Wilson* points out "While the exact words or circumstances of the defamation need not be alleged, the substance of the defamatory statement must be alleged to state a claim." *Id.* at *12. Compare, Dkt. 47 at 22.

### 3.4  Emotional Distress Theory of Liability Is Plausible Given Alleged Facts

As Plaintiffs have previously noted, Plaintiffs have a good faith basis upon which to allege specific facts of personal injury and emotional distress including sleeplessness, anxiety, depression (including suicidal ideation), physical pain including but not limited to headaches, heartburn and nausea, and malaise. Compare, *Cross v. Wells Fargo Bank, N.A.* 2011 U.S. Dist. LEXIS, * 17 (C.D. Cal. Dec. 9, 2011) [Dkt 47 at 24]. Defendants cite [Dkt. 47 at 24] *George v. Sonoma County Sheriff's Dept.* 2009 U.S. Dist. LEXIS 24822 (N.D. Cal. March 12, 2009) at *26 for the pleading requirements of an Intentional/Negligent Infliction of Emotional Distress Claim.

The practice of incorporating allegations by reference is permitted in Federal pleading. Fed. R. Civ. P. 10(c). The allegations of the FAC's claim for Intentional Infliction of Emotional Distress incorporate by reference preceding paragraphs 1-107. The allegations must be accepted as true for the purposes of a 12(b)(6) review describe at least conduct by each of the conspirators that "may be

---

[7] All criminal counts related to the four seized horses were dismissed in May 2014.

considered outrageous if… abuses a relation or position which gives him power to damage the plaintiff's interest." *George.* at *19. Both plaintiffs were present at the Chileno Valley Road property on December 27 and January 4 and have together suffered the multiple outrageous incidents inflicted without mercy or temperance by the conspirators.

### 3.5 No MHS Defendant Is Entitled To Immunity As They Are Private Entity Employees

*Jackson v. Silicon Valley Animal Control Authority* 2008 U.S. Dist. LEXIS 76837 (N.D. Cal. Oct. 2, 2008) does not stand for the proposition that employees of Humane Societies are entitled to immunity preventing successful pleading of a complaint against them as a matter of law as represented by Defendants in Motion to Dismiss, Dkt. 47 at 22. *Jackson* does not support the Defendants' argument that MHS, McKenney, Machado, Hill and Rogers (MHS and its employees) are entitled to immunity for all torts arising out of investigation and seizure of plaintiffs' horses pursuant to 597.1. The *Jackson* opinion is the result of motions for summary judgment, not motions to dismiss on the pleading. In that case, the defendants eligible for immunity were government employees, not humane society employees.

MHS is not a public or government agency and its employees are the private employees of MHS, a private entity. In *Jackson,* the Humane Society was only sued under a state law theory of conversion and dismissal did not rely on an immunity claim. Unlike Burnells' FAC concerning unlawfully seized commercial livestock, the *Jackson* plaintiffs did not challenge the validity of the lien procedure for companion/noncommercial purposed dogs and cats. Further, at least with respect to Romantic Star, the Burnells have paid the unreasonable, extortionate lien demand to secure the return of the valuable breeding stallion despite their contemporaneous challenge to the validity of MHS' claim for those fees as well as those demanded for the broodmares. Unlike the present action, there was no allegation in *Jackson* that the Humane Society itself unlawfully seized the animals or participated in the violation of plaintiffs' civil rights.

### 3.6 MHS Liability Does Not Rest On Any Purported Judicial Capacity

Defendants' cite *Clemes v. Del Norte County Unified School District* 1995 U.S. Dis. LEXIS 14298 (N.D. Cal. Sept. 19, 1995) for the proposition that immunity extends to agencies acting in their "judicial capacity." (Dkt 18, 19, 22). It does not consider 597.1 hearings by private entities not authorized to enforce 597.1. MHS is not a state or local "public" agency and therefore *Clemes* is inapposite.

Plaintiffs allege that 597.1 is invalid at least as it is overbroad because it permits substituting animal husbandry opinions of untrained, faultily appointed individuals to override the good practices of animal owners and their veterinary experts. The standard of "reasonable belief" and "necessary care" are completely unbounded. It permits the state actor, here MHS Defendants as enabled by COUNTY policy, to punish differences of opinion about which there is no rational state interest. The statute permits an unfounded presumption of competency, fairness and due process in administrative post deprivation hearings without direction or structure to ensure the parties have an adequate opportunity to litigate to call witness or subpoena persons. It makes no provision for the fundamental vested rights of owners in their recognized property rights in pets or commercial livestock.[8] In *Clemes* a three party panel including a State Administrative Law Judge presided over a highly regulated inquiry. That is not the BURNELLS' case.

---

[8] Defendants cite *Anderson v. Smith* 2009 U.S. Dist. LEXIS 58804, *58 (E.D. Cal. July 10, 2009) for the proposition that the 9th Circuit found that California law provides an adequate post-deprivation remedy. In that case, there was no post deprivation hearing. The seizure was conducted by employees of the City of Clovis, its police department and other municipal employees. The absence of a statutorily qualified officer or agency was not at issue. In that case, the accused plead guilty to criminal mistreatment of the seized animals, and the facts disclosed not a disagreement over what constituted necessary care, but an actual, immediate health emergency threatening the life and safety of both the animals and residents of the home from which they were seized. The qualified, statutorily enabled officers described the conditions present not by reference to morbid sentimentality or misleading cherry picked photographs, but graphic descriptions of objective facts of their personal knowledge concerning the violations of specific Municipal Codes, quantities or urine, feces (detectable outside the property line, beyond a solid wood perimeter fence, emanating from a closed residential structure), the public nuisance of barking dogs about which neighbors had complained for weeks, untreated open wounds, mites and fleas so numerous they were visible and leaping onto the officers, and the like. None of those facts and conditions were present when MHS encountered the BURNELLS.

Finally, the conduct of the conspirators begins at least by October 2012 culminating in the wrongful seizure of four breeding horses by January 4, 2013. None of that conduct is the conduct of "the agency" acting in its lawful judicial capacity. Further, while plaintiffs certainly agree that the so-called administrative hearings on January 8 and 24, 2013 and in March 2015 (unjustifiably presuming a proper agency in the first place) were insufficient (i.e. fail the test of presenting an adequate opportunity to litigate), they have in fact raised those matters by mandamus.[9] Any "stalling" is the direct result of the conduct of MHS by first knowingly appointing in 2013 an unqualified, biased Hearing Officer, not by any conduct of the BURNELLS.[10] Finally, the fact that it is now nearly 3 years past the date of the original seizure of agricultural/commercial breeding livestock and the "administrative process" is not concluded (because of the fraudulent conduct of MHS and its employees) that is itself a constitutional violation- a deprivation of procedural due process and definitely a failure to provide an adequate, timely, post-deprivation remedy in an agricultural context concerning seizure and refusal to return commercial breeding livestock. *Carrera v. Bertaini*, 63 Cal. App. 3d 721 (1976). *Clemes* is distinguishable therefore on its facts. In

---

[9] Similarly, Defendants cite *Khalafala v Scully* 2008 U.S.Dist. LEXIS 101590 (C.D. Cal. Dec. 16, 2008) at Dkt 47 at 10 for the proposition that deprivation of property cannot succeed if there is a meaningful post deprivation remedy. *Khalafa* does not consider Cal. Penal Code section 597.1 post deprivation process  There was no County policy or custom alleged to be the instrument relied upon by the conspiracy causing deprivation. Further, *Khalafa* also ordered leave to file an amended complaint.

[10] Plaintiffs contend that as a matter of federal law, they have been denied sufficient post deprivation due process due to the passage of time as well as due to other procedural defects. Defendants' bogus enthusiasm for the pending mandamus proceedings is a red-herring. Any delay claimed, in any event, is the fault of Defendants' conduct. MHS did not offer to reopen the so called administrative hearings even after acknowledging the original fault of appointing an unqualified, biased Hearing Officer. MHS delayed convening the hearing after remand six months after the appellate order issued. The current mandamus proceedings are stalled by MHS' refusal to prepare an administrative record in less than six months (currently predicting a late October delivery). There were other serious defects with those proceedings. For example, it is also uncontrovertible that in the March 2015 proceedings, notice of the "scope" of the hearing was announced <u>after</u> the evidentiary hearing concluded. Burns' Order, April 1, 2015. Further, with the matters unresolved by December 2014, Plaintiffs were obliged to preserve their federal claims lest at some later date the defense was raised that they rested on their rights and relevant statutes of limitation expired. *Survive,* at 11-12 citing *Johnson v. State of California* 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.* 993 F.2d 710, 711 (9th Cir. 1993).

addition, *Clemes* is also an order after a motion for summary judgment, resulting in a stay, and was not an order of dismissal with prejudice under 12(b)(6).

## 4    CONCLUSION

For all of the above stated reasons and authorities, BURNELLS respectfully request that the Motion to be Dismiss be denied, or in the alternative, that the BURNELLS be given leave to amend their complaint.

Dated: September 29, 2015                                WEEMS LAW OFFICES

/s/ Margaret M. Weems
Margaret M. Weems,
Attorney for Defendant,
JILL BURNELL AND ALEX BURNELL